[Cite as *State v. Smith*, 2021-Ohio-378.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                 No. 109402

    v.                           :

SYLVESTER SMITH, JR.,                   :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 11, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-640084-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Maxwell Martin and Janna Lifford, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Sylvester Smith, Jr., appeals his convictions following a jury trial. Finding no merit to the appeal, we affirm.

{¶ 2} In February 2018, Smith was indicted for offenses related to the death of Robert Pettway. In May 2019, Smith was reindicted with his codefendant, Trenton Pope, with two counts each of aggravated murder, felonious assault, and discharging a firearm on or near prohibited premises; and one count each of murder, kidnapping, and having weapons while under disability. Most of the counts contained one- and three-year firearm specifications, and the kidnapping and felonious assaults counts contained repeat violent offender specifications and notices of prior conviction. Smith elected to have the weapons while under disability count tried to the bench, and a jury heard evidence about the remaining offenses.

{¶ 3} In the late afternoon on February 13, 2017, police responded to shots fired and found Pettway dead with seven gunshot wounds to his arms, legs, and chest in a driveway at 10820 Olivet Avenue. Surveillance video taken from "On the 5 Auto Sales" ("the shop") reveals that Pettway was with Smith, Pope, and other individuals just prior to his death. The video showed Smith, Pope, and another unidentified male escorting Pettway down East 105th Street, to the shop, and into a closed-door office. At approximately 3:39 p.m. Pettway emerged from the office with approximately nine men following. Smith, Pope, and another male walked with Pettway away from the business down East 105th Street toward Olivet Avenue.

{¶ 4} Keyshawn Lewellen testified that he was standing outside of his house on Olivet Avenue talking with a friend, when he saw four unknown black males walk up the street and sit on the porch of 10824 Olivet Avenue, which was diagonally across the street from his house. He said that he heard the men arguing and then

saw two of the men "beating up" one of the guys, later identified as Pettway. According to Lewellen, Pettway flipped over the banister after being punched in the face and landed on his back on the ground. One of the men, who was standing on the porch, shot Pettway in the chest, but Pettway was able to flee toward the house next door. Lewellen testified that he and his friend retreated to the backyard, but he heard multiple gunshots. He stated that he saw the three men running away from the scene, but that Pettway was lying in the driveway between two houses. Lewellen testified that he did not know any of the males he saw, could not describe any additional physical characteristics of the men, and did not see who shot Pettway.

{¶ 5} Surveillance from the shop showed Smith, Pope, and the other unidentified male walking from the Olivet Avenue direction and returning to the shop at 3:49 p.m. The video captured Smith and his then-girlfriend, Keyla Ligon talking outside of the office door. The state contended at trial that there was a visible bulge in Smith's coat pocket, but after handing something to Ligon, the bulge was no longer present. The state maintained that Smith handed Ligon a firearm.

{¶ 6} Cleveland police responded to 911 calls for shots fired in the Olivet area and that someone was lying in a driveway at 10820 Olivet Avenue. Cleveland EMS paramedic Brendan Dunn testified that although Cleveland police officers were attempting first aid to Pettway, it was apparent that he was already deceased.

{¶ 7} As part of the investigation, officers secured the area and searched for evidence. Seven FC 9 mm Luger cartridge casings were located between 10828 and 10814 Olivet Avenue. Police also collected a metal fragment, later identified as a

bullet fragment, from the driveway, and a water bottle from the porch of 10828 Olivet Avenue.

{¶ 8} Approximately six-months later in August 2017, Cleveland police raided Redd Rubie's, an illegal after-hours liquor establishment. Smith was a promoter for Redd Rubie's; he also worked the door and searched individuals for weapons. During that raid, police recovered several firearms, including a Taurus 9 mm handgun that police discovered under a cabinet in the office.

{¶ 9} Forensic scientist and DNA analysist, Lisa Moore, testified that she conducted DNA testing on several pieces of evidence, including the water bottle from the porch on Olivet Avenue, the spent cartridge casings from the murder site, and the Taurus 9 mm handgun from Redd Rubie's. Moore testified that the water bottle contained Pope's DNA. She testified that her testing revealed a mixture of DNA on the shell casings, including Smith's DNA. Moore stated that further testing revealed that Smith was a major contributor in that mixture. She also testified that a mixture of DNA was found on the Taurus handgun, which included Smith's DNA, but that his contribution to the mixture was weighted at 30 percent.

{¶ 10} Ballistics expert, James Kooser, testified that he conducted toolmark analysis on the seven spent cartridge casings, bullet fragment, bullets recovered from Pettway's body, and the Taurus 9 mm handgun. According to Kooser, the casings, fragment, and bullets were all fired from the Taurus handgun.

{¶ 11} The jury found Smith not guilty of all counts charging him with aggravated murder, kidnapping, and discharging a firearm on or near prohibited

premises. The jury returned guilty verdicts on the charge of murder, both counts of felonious assault, and the attendant firearm specifications. The court found Smith guilty of having weapons while under disability. The trial court imposed an aggregate sentence of life in prison with parole eligibility after 21 years.

{¶ 12} Smith now appeals, raising two assignments of error for our review.

## I. Sufficiency and Manifest Weight of the Evidence

{¶ 13} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus.

{¶ 14} In his first assignment of error, Smith contends his "convictions were obtained on insufficient evidence and were against the manifest weight of the evidence." Although challenging a conviction based on insufficient evidence and as being against the manifest weight of the evidence is both quantitatively and qualitatively different and require different standards of review, we will address these challenges together because Smith raises them as a single assignment of error.

{¶ 15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if

believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 16} Weight of the evidence, on the other hand, concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." *Eastley* at ¶ 12, quoting *Thompkins* at 387. In a manifest weight analysis, this court sits as a "thirteenth juror," and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). If the state presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, a reviewing court will not reverse the judgment of conviction as against the manifest weight of the evidence. *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.

**{¶ 17}** Smith makes no challenge to the elements of the offenses or whether the evidence supports the elements. Rather, he contends that his convictions are based on unreliable evidence that lack scientific certainty, specifically touch DNA and ballistic evidence. According to Smith, scientific misconceptions and studies of touch DNA and ballistic toolmark analysis leads to reasonable doubt whether Smith murdered Pettway. Because questions regarding reliability of evidence goes toward the weight of the evidence, we will begin our analysis there.

**{¶ 18}** We initially note that Smith did not file any motions in limine to exclude evidence or testimony about ballistic toolmark analysis or touch DNA. Additionally, Smith did not object to the court declaring Kooser as an expert in firearms and toolmark examination, or Moore as an expert forensic scientist and DNA analyst.

**{¶ 19}** Typically, a defendant raising claims that challenge the evidence and testimony as being unreliable or inadmissible scientific evidence or expert testimony does so under the Rules of Evidence. *See, e.g., Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 687 N.E.2d 735 (1998) (admissibility of expert testimony considered under Evid.R. 702), *State v. Nemeth*, 82 Ohio St.3d 202, 694 N.E.2d 1332 (1998) (same); *State v. Langlois*, 2013-Ohio-5177, 2 N.E.3d 936 (6th Dist.) (challenging the admissibility of toolmark analysis as inadmissible pursuant to Evid.R. 702).

**{¶ 20}** However, questions only regarding the reliability of ballistic, toolmark analysis, and DNA evidence go to the weight of the evidence rather than its admissibility. *See generally Langlois* (ballistic and toolmark analysis); *State v.*

*Pierce*, 64 Ohio St.3d 490, 597 N.E.2d 107 (1992) (DNA).  Accordingly, the trier of fact, the judge or jury, determines whether the evidence is reliable based on the expert testimony and other evidence presented.  *Id.*

{¶ 21} Our review of the record demonstrates that both experts were extensively examined on their respective areas of expertise.

{¶ 22} Moore was specifically questioned about touch DNA, how it occurs, the length of time an individual needs to handle an item, and whether one person's DNA can be transferred by another individual.  She stated that Smith was just one contributor of a mixture of other unknown DNA that was discovered on firearm shell casings.  Moore further admitted that four to seven unknown DNA contributors were discovered from the four swabs taken from the firearm that police identified as the murder weapon.  And the jury heard testimony from Ligon, Smith's then-girlfriend, who testified that on prior occasions Smith searched individuals and confiscated firearms from them when he worked at the door at Redd Rubie's.

{¶ 23} Regarding the expert testimony about ballistic evidence and toolmark analysis, Kooser was questioned about how firearms are manufactured using tools and machines, which leaves toolmarks on the firearms.  These marks, if present, are then transferred to the bullet casings when the firearm is fired.  Kooser was examined on whether assembly-line production could cause similar marks on multiple firearms.  Additionally, he was questioned on the various brands of ammunition recovered from the magazine inside the firearm and the spent shell casings found at the murder scene.  Although Kooser testified to a reasonable degree

of scientific certainty that the seven casings and the bullet fragment collected at the scene, and the three bullets that were recovered from Pettway were all fired from the Taurus handgun discovered at Redd Rubie's, Kooser could not say who fired the weapon when it was used to murder Pettway.

{¶ 24} The record reveals that the jury was presented with sufficient testimony and evidence to decide whether the evidence and testimony were reliable. We find that Smith's convictions are not against the manifest weight of the evidence; this case is not the exceptional case where the evidence weighs heavily against conviction and a new trial must be ordered. It was within the province of the jury to attach the amount of the weight to the evidence that it deemed appropriate to the expert testimony on toolmark analysis and touch DNA. This consideration, coupled with the surveillance video where the jury could view the demeanor and actions of Smith both before and after Pettway's murder, does not lead this court to find that the jury lost its way in finding Smith guilty of murder and felonious assault. Moreover, the jury found Smith not guilty of both counts of aggravated murder and kidnapping, thus demonstrating that the jury considered all the evidence and held the state to its burden.

{¶ 25} Although not specifically argued on appeal, we find that viewing the evidence in the light most favorable to the state, sufficient evidence was presented that Smith murdered Pettway. Surveillance video showed Smith and Pope with Pettway and another individual walking toward Olivet Avenue away from the shop. A neighbor testified that he saw four men walk onto the porch of 10828 Olivet and

a fight ensued. He stated that he saw Pettway being knocked on the ground and hearing a gun shot. As Pettway attempted to run away, additional shots were fired; Pettway died on the driveway from multiple gunshot wounds. Minutes later, Smith, Pope, and the other unidentified male returned to the shop. The video showed Smith talking with Ligon and handed her, what the state contended, was a firearm. At a subsequent raid of Redd Rubie's, police recovered a firearm that contained Smith's DNA. According to a ballistic expert, the shell casings discovered at the crime scene and bullets recovered from Pettway's body were fired from this recovered firearm. A DNA expert testified that the shell casings also contained Smith's DNA.

{¶ 26} Accordingly, Smith's first assignment of error is overruled.

## II. Evidentiary Ruling — Prejudicial and Gruesome Photographs

{¶ 27} At a sidebar conversation during the testimony of Dan Galita, the forensic pathologist and medical examiner at the Cuyahoga County Medical Examiner's Office who conducted Pettway's autopsy, defense counsel objected to three autopsy photographs that depicted metal probes inserted into Pettway's body. The trial court overruled the objection and Galita testified about nine photographs taken during the autopsy of the gunshot wounds Pettway suffered. At the close of evidence, the court admitted all of the photographs over counsel's objection.

{¶ 28} The relevant autopsy-photo-exhibits depict Pettway's cleaned and unclothed body showing multiple gunshot wounds. Exhibit No. 100 is a photograph of Pettway's entire body. Exhibits Nos. 107, 110, 111, 113, and 114 show up-close

individual gunshot wounds.  Exhibit Nos. 117, 118, and 119, depict certain gunshot wounds that contained an entry and exit wounds.  To demonstrate the trajectory of those gunshots, Galita stated that he inserted metal probes or rods into the victim through the wounds, and then took individual photographs of the victim with these probes in place — exhibit No. 117 showed two metal probes inserted into the victim's arm; exhibit No. 118 showed a metal probe inserted into the victim's wrist; and exhibit No. 119 showed a metal probe inserted into the victim's leg.

{¶ 29} Smith contends in his second assignment of error that the "trial court erred in denying his motion to prevent the prejudicial and cumulative presentation of gruesome photographs."  Specifically, Smith proposes that when there is no discernable purpose between the photographs and the factual dispute in the case, the photographs should be excluded.  We find that Smith's proposition may be persuasive in some cases, but as applied to this case, it is not.

{¶ 30} The admissibility of gruesome photographs in a noncapital case is considered with reference to Evid.R. 403.  *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 95-96, quoting *State v. Morales*, 32 Ohio St.3d 252, 257-258, 513 N.E.2d 267 (1987).  Under Evid.R. 403(A), otherwise relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  The exclusion of relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court.  *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391,

819 N.E.2d 215, ¶ 107, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶ 31} "Autopsy photographs are generally admissible to help the jury appreciate the nature of the crimes, to illustrate the coroner's or other witnesses' testimony by portraying the wounds, to help prove the defendant's intent, and to show the lack of accident or mistake.'" *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 142, citing *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 52. Consequently, autopsy photographs — even if gruesome — are not per se inadmissible. *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

{¶ 32} Contrary to Smith's assertion that the photographs had no discernable connection to factual issue in dispute, we find that the photographs aided in the state's presentation of how and in what manner Pettway was shot. Smith was indicted with two counts of aggravated murder — (1) purposely, and with prior calculation and design, caused the death of another; and (2) purposely caused the death of another while committing or attempting to commit kidnapping. The state introduced the photographs to show each gunshot wound and the trajectory of each when entrance and exit wounds were present. According to the state, the trajectory and the string of spent cartridge casings found at the murder site demonstrated that the Smith acted with prior calculation and design by chasing after Pettway and repeatedly shooting at him even as he was already wounded and attempting to run away. The fact that the jury found Smith not guilty of both counts of aggravated

murder does not render the trial court's decision to admit the photographs an abuse of discretion. The challenged photographs were relevant and admissible because they illustrated Galita's testimony and aided the jury in understanding the state's theory of the case. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.23d 596, ¶ 142. (photographs, although gruesome, were properly admitted to support the coroner's testimony about the entrance and exit wounds in victim's head); *State v. Tyus*, 9th Dist. Summit No. 29505, 2020-Ohio-4454, ¶ 41, and *State v. Tyus*, 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 19 (no abuse of discretion found in the admission of autopsy photographs where metal rods inserted into the victim's brain to show trajectory of the bullet).

{¶ 33} Accordingly, the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice. We further find that these photographs were not cumulative because each photograph published to the jury and admitted into evidence depict a different gunshot wound and the trajectory photographs show a different path of travel from different injuries. The trial court did not abuse its discretion in admitting these photographs into evidence. Smith's second assignment of error is overruled.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

convictions having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR