[Cite as *State v. Barnette*, 2014-Ohio-5673.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 11 MA 196 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| LORENZA BARNETTE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                                              Court, Case No. 09 CR 1122.

JUDGMENT:                                         Affirmed.

APPEARANCES:
For Plaintiff-Appellee:                        Attorney Paul J. Gains
                                                             Prosecuting Attorney
                                                             Attorney Ralph M. Rivera
                                                             Assistant Prosecuting Attorney
                                                             21 W. Boardman St., 6th Floor
                                                             Youngstown, OH 44503

For Defendant-Appellant:                   Attorney J. Gerald Ingram
                                                             7330 Market Street
                                                             Youngstown, OH 44512

                                                             Attorney Ronald Yarwood
                                                             DeGenova & Yarwood, LTD.
                                                             42 N. Phelps Street
                                                             Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                                             Dated: December 17, 2014

DeGenaro, P.J.

{¶1} Defendant-Appellant Lorenza Barnette appeals the October 26, 2011 judgment entry of the Mahoning County Court of Common Pleas convicting him of numerous counts and sentencing him to life imprisonment without the possibility of parole. Barnette argues that the trial court abused its discretion in denying his motion to reopen the trial; in precluding trial counsel from impeaching the credibility of a witness with specific conduct; and erred when it overruled his motion in limine to prohibit testimony regarding statistical DNA population frequency estimates. Because Barnette's assignments of error are meritless, the trial court's decision is affirmed.

## Relevant Facts and Procedural History

{¶2} On October 1, 2009, the State of Ohio filed an indictment against Barnette containing two counts of aggravated murder, R.C. 2903.01(A)(F) with death penalty specifications; two counts of aggravated murder, R.C. 2903.01(B)(F) with death penalty specifications; two counts of kidnapping, R.C.2905.01(A)(2); two counts of aggravated robbery, R.C.2911.01(A)(3)(c); and arson, R.C.2909.03(A)(1)(B)(2). On March 9, 2011, the State filed a bill of particulars alleging that Barnette, along with two other individuals, murdered Jaron Roland and Darry Woods by smothering and binding the victims with duct tape and plastic while committing or attempting to commit a robbery, suffocating them to death. The bill further alleged that the three men kidnapped Roland and Woods and lit a rental car on fire.

{¶3} A jury trial commenced on October 3, 2011. Two days later, a subpoena duces tecum was served upon the Youngstown Police Department requesting all documentation pertaining to "any finding of a false claim of entitlement to overtime compensation benefits or the over claiming of entitlement of overtime compensation by Lt. John Kelty." Kelty had previously been found to have violated two rules of the General Orders Manual of the Youngstown Police Department, and Barnette proffered the evidence for purposes of impeachment, which the State opposed. Outside the presence of the jury, the trial court heard the parties' arguments; Barnette argued that Kelty's actions were probative of truthfulness and therefore subject to cross-examination. The State argued Barnette failed to establish how Kelty's reprimand was relevant or probative

of truthfulness, and evidence of the reprimand would shift the attention to the administration of the Police Department, as opposed to the guilt or innocence of Barnette. The trial court overruled the motion finding:

> the reprimand of Lieutenant Kelty is not related to the current matter or his role in the investigation. The court further finds that reprimand concerns matters which occurred approximately two years after the investigation occurred in the case currently called for trial. Finally the Court finds that Internal Affairs did not find the Lieutenant to have acted untruthfully, but rather improper and unprofessionally.

**{¶4}** Barnette next filed a motion in limine which sought to prohibit testimony of BCI analysts Brenda Gerardi and Christopher Smith regarding DNA population frequency estimates, contending this raised a Confrontation Clause issue, asserting the information is testimonial in nature, and since Smith and Gerardi had no personal knowledge of how to prepare the database used for basing the statistical calculations, Barnette's rights were violated. The State argued that the sort of testimony offered by Gerardi and Smith had been upheld in other cases and is part of the regular practice of the scientific community; moreover, the requirement of an FBI witness to testify as to how the statistics are calculated would place an impractical burden on the State when using such information. The trial court denied Barnette's motion, concluding that the statistical DNA evidence is non-testimonial and therefore the Confrontation Clause does not apply.

**{¶5}** After the State rested, Barnette made a Rule 29 motion to dismiss, which was overruled. Additionally, the arson charge was amended to reflect that the damage to the car was over $500 in value.

**{¶6}** After Barnette rested, he filed a motion to reopen the case and requested a material witness warrant, arguing that State's witness, Alfonda Madison, committed crimes the day before he testified and that on the day he testified criminal complaints were filed and warrants were issued relating to those crimes. Barnette contended that these actions were grounds for cross-examination as they go to Madison's propensity for

truthfulness, as well as potential bias and motive. The trial court overruled Barnette's requests, and the parties thereafter presented closing arguments.

{¶7} The following day Barnette was found guilty of all four counts of aggravated murder, two counts of kidnapping, and one count of arson. Barnette was found not guilty on both counts of aggravated robbery.

{¶8} During the mitigation portion of the trial the jury found that the aggravating circumstances did not outweigh the mitigating factors. The trial court proceeded to sentencing, and finding no reason to set aside the recommendation of the jury, as to the aggravated murder of Woods and death penalty specifications contained in count one, the trial court sentenced Barnette to life imprisonment without parole. Count two was merged with count one. As to count three, the aggravated murder of Roland and death penalty specifications, the trial court sentenced Barnette to life imprisonment without parole. Count four was merged with count three. As to counts five and six, the kidnapping of Woods and Roland, Barnette was sentenced to ten years on each, and eighteen months on count nine, the arson conviction, with all counts to be served consecutively to each other

**Motion to Reopen**

{¶9} In his first of three assignments of error, Barnette asserts:

{¶10} "The trial court abused its discretion when it denied appellants' (sic) motion to reopen the case."

{¶11} "The question of opening up a case for the presentation of further testimony is within the sound discretion of the trial court, and the court's action in that regard will not be disturbed on appeal unless under the circumstances it amounted to an abuse of discretion." *Columbus v. Grant*, 1 Ohio App.3d 96, 97, 439 N.E.2d 907 (1981). "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 7th Dist. No. 10 MA 185, 2013–Ohio–2951, ¶ 21. In order to demonstrate that a trial court abused its discretion by the manner in which it resolved a

motion to reopen a case, the moving party must demonstrate it was prejudiced by the ruling. *State v. Montgomery,* 61 Ohio St.3d 410, 413, 575 N.E.2d 167 (1991).

**{¶12}** On October 18, 2011, Barnette sought to reopen his case in order to question Alfonda Madison, the State's witness, regarding criminal charges which were filed against him. Madison testified on October 12, 2011, and Barnette contends that Madison committed a series of crimes the day before he testified, arguing that Madison's involvement in criminal activity contradicts his trial testimony that he was afraid to testify. Barnette concludes that if Madison was actually afraid to testify then he would not have been out committing alleged criminal acts.

**{¶13}** The State counters that Barnette could not present extrinsic evidence that Madison was charged with an offense pursuant to Evid.R. 608(B), and if Madison were called back to the stand regarding these allegations, he would have likely asserted his Fifth Amendment right against self-incrimination, and as the charges were ultimately dismissed against Madison there was no resulting prejudice to Barnette. The trial court overruled the motion, reasoning:

> This court feels compelled to remind Defense Counsel that all individuals are assumed innocent until proven guilty. The mere fact that a person has been accused of a crime does not necessarily make his testimony false. Furthermore, the veracity of this witness's testimony was already called into question by Defense Counsel. The State disclosed, the witness verified, and Defense Counsel inquired into the witness's past criminal history and the plea agreement he entered into for his testimony in this case. Additionally the jury was initially instructed and will be instructed during the final instructions that they must determine the credibility or believability of all witnesses and what weight to give each witnesses' testimony.

**{¶14}** "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime * * * may not be proved by extrinsic evidence." Evid.R. 608(B).

**{¶15}** Merely being charged with a criminal offense does not make Madison's testimony false, nor does it make him guilty as the matter had yet to be tried. Further, pursuant to Evid.R. 608(B), evidence that Madison had allegedly committed various other crimes is inadmissible for impeachment purposes as he had not been convicted of those crimes at the time Barnette sought to use them.

**{¶16}** Defense counsel questioned Madison about the conflicting statements he gave, the sentencing consideration he received for his testimony against Barnette and his previous convictions. Significantly, defense counsel actually did question Madison about whether he was afraid to testify and if his actions relating to the present case were consistent with that fear. Finally, there is no allegation that the State was withholding information; the defense confirmed that the State was unaware of the incident at the time of Madison's testimony. Therefore Barnette cannot demonstrate prejudice as a result of the denial.

**{¶17}** Accordingly, because the trial court did not abuse its discretion in overruling Barnette's motion to reopen the case, as evidence of Madison's alleged crimes are inadmissible Barnette's first assignment of error is meritless.

### Impeachment Evidence

**{¶18}** In his second of three assignments of error, Barnette asserts:

**{¶19}** "The trial court abused its discretion in precluding defense counsel from impeaching the credibility of Detective Kelty with a specific instance of conduct that was clearly probative of his character for untruthfullness (sic)."

**{¶20}** Barnette contends that the trial court abused its discretion when it denied him the opportunity to cross examine Lt. John Kelty of the Youngstown Police Department with his disciplinary record as he alleges that this was probative of his truthfulness and admissible pursuant to Evid.R. 608(B). The State counters that the records were inadmissible because they were not probative of Kelty's truthfulness because Internal Affairs concluded that Kelty's behavior was improper and unprofessional rather than untruthful. The trial court overruled the motion finding Kelty's reprimand was not related to the present case or his role in the investigation, having been based upon Kelty's

conduct in another investigation which occurred in 2011, approximately two years after the 2009 murders, with the trial court attaching particular significance to the Internal Affairs determination.

**{¶21}** "Evid.R. 608(B) allows, in the trial court's discretion, cross-examination on specific instances of conduct 'if clearly probative of truthfulness or untruthfulness.' " *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992), paragraph one of the syllabus. "The trial court may, in the exercise of its sound discretion, decide not to permit such cross-examination." *State v. Smith*, 4th Dist. No. 94 CA 34, 1995 WL 625652 *3 (Oct. 12, 1995) (internal citations omitted).

**{¶22}** Kelty's conduct and the resulting reprimand occurred two years after the 2009 murder investigation resulting in Barnette's arrest, as well as being wholly unrelated to this case. Although Barnette asserts Kelty's actions were probative of his truthfulness, this contention is not supported by the record. The investigation findings, made part of the record through the trial court's judgment entry denying the admission of the proffered impeachment evidence, indicate that Kelty demonstrated unprofessional conduct by choosing to supervise a 2011 homicide case from his home as opposed to reporting to the scene. The report indicates that Kelty "did maintain phone contact with the on scene detectives as their investigation progressed and ensured that proper personnel were apprised of the situation." The report concluded that Kelty should have physically reported to the scene since he submitted an overtime card for callout compensation pay, resulting in the conclusion that Kelty was found to have engaged in "Improper Conduct."

**{¶23}** The trial court's decision to exclude this line of cross-examination was not unreasonable. Kelty's actions were improper and unprofessional but not clearly probative of untruthfulness. *Boggs, supra.* In light of the record, the trial court did not abuse its discretion in the present case in prohibiting defense counsel from questioning Kelty about the internal disciplinary action. Accordingly, Barnette's second assignment of error is meritless.

### DNA Evidence

**{¶24}** In his final assignment of error, Barnette asserts:

**{¶25}** "The trial court erred when it overruled appellant's motion in limine to prohibit BCI analysts from testifying regarding statistical DNA population frequency estimates generated by the FBI's CODIS database by FBI personnel not subject to cross-examination."

**{¶26}** The Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him" and this protection is applicable to the states through the Fourteenth Amendment of the Constitution of the United States. *Pointer v. Texas*, 380 U.S. 400, 403-06, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). To conform with a defendant's federal confrontation rights, the testimonial statements of a witness absent from trial shall only be admitted into evidence against the defendant when the witness is unavailable to testify and when the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, 68-69, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). A de novo standard of review is applied to a claim that a criminal defendant's rights have been violated under the Confrontation Clause. *State v. Rinehart*, 4th Dist. No. 07CA2983, 2008–Ohio–5770, ¶ 20 (internal citations omitted).

**{¶27}** Barnette argues that the trial court's error resulted in a violation of his constitutional right to confront witnesses against him. The State responds that this court recently concluded that such testimony does not violate the Sixth Amendment in *State v. Smith*, 7th Dist. No. 11 MA 120, 2013–Ohio–756; appeal dismissed as improvidently granted, 137 Ohio St.3d 1470, 2014-Ohio-176, 2 N.E.3d 266. In *Smith*, the defendant challenged the forensic analyst who testified because that analyst did not generate the DNA profile, and further argued that BCI analysts should not be permitted to testify about the statistical frequency of the DNA profile occurring in the population because this number was produced by entering the profile into an FBI computer program containing an FBI-generated population database. Smith argued that a knowledgeable FBI representative would have to testify as to how the database was established and how the number was derived.

**{¶28}** Although Barnette does not challenge the forensic analysts in the present case as they did generate the DNA profiles that they testified to, he does take issue with their testimony regarding FBI generated DNA population frequency estimates. However, in *Smith* this court held:

> The Ohio Supreme Court has ruled that an expert can testify to the statistical conclusions about DNA evidence without being an expert in statistical analysis. *State v. Foust,* 105 Ohio St.3d 137, 2004–Ohio–7006, 823 N.E.2d 836. The Court explained that questions regarding the reliability of statistics on population frequency go to the weight rather than the admissibility of the evidence. *Id.* (thus counsel was not ineffective for failing to object to the analyst's testimony on population frequency), citing *State v. Pierce,* 64 Ohio St.3d 490, 501, 597 N.E.2d 107 (1992). *See also State v. Adams,* 103 Ohio St.3d 508, 525, 2004–Ohio–5845, 817 N.E.2d 29, ¶ 80–82.
>
> Various courts have ruled that an analyst's testimony on the population frequency estimate obtained from the FBI database was permissible and the statistic obtained was not testimonial evidence under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *See State v. Bolton*, 12th Dist. No. 96385, 2012–Ohio–169, ¶ 64; *State v. Bruce*, 5th Dist. No. 2006–CA–45, 2008–Ohio–5709, ¶ 62, 69; *State v. Powell*, 2d Dist. No. 18095 (Dec. 15, 2000); *State v. Breeze*, 10th Dist. No. 92AP–258 (Nov. 24, 1992). See also *State v. Collins*, 6th Dist. No. L–05–1399, 2007–Ohio–3578, ¶ 17, 21–24 (court can allow expert to testify on statistics even though they were solely the result of a statistical program supplied by the FBI); *State v. Stokes*, 8th Dist. No. 71654 (Dec. 11, 1997); *State v. Minor*, 47 Ohio App.3d 22, 24, 546 N.E.2d 1343 (10th Dist.1988) (expert can apply facts in evidence to scientific table)."

*Smith*, ¶ 35-36.

**{¶29}** As this court has recently analyzed this issue and held that the population frequency estimates obtained from the FBI database are permissible and not testimonial in nature, and moreover, goes to weight rather than admissibility, the trial court did not err in denying Barnette's motion in limine and permitting the testimony from the BCI analysts, rather than requiring testimony from an FBI analyst. Accordingly Barnette's third assignment of error is meritless.

## Conclusion

**{¶30}** In sum, the trial court did not abuse its discretion in denying Barnette's motion to reopen the trial, denying his motion in limine to prohibit testimony regarding statistical DNA population frequency estimates or prohibiting defense counsel from questioning Lt. Kelty about an internal disciplinary action unrelated to the present matter and not clearly probative of untruthfulness. Accordingly, all of Barnette's assignments are meritless and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.