# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

LORENZA I. BARNETTE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 MA 0089

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2009 CR 01122

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Judges and
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova,* Mahoning County Prosecutor, *Atty. Ralph M. Rivera,* Chief,
Criminal Division, Office of the Mahoning County Prosecutor, for Plaintiff-Appellee and

*Lorenza I. Barnett*, pro se.

Dated:  March 27, 2024

**Robb, P.J.**

{¶1} Appellant, Lorenza I. Barnette, appeals two judgments issued by the Mahoning County Court of Common Pleas in June of 2023. Appellant challenges the trial court's denial of his postconviction application for DNA testing. He also appeals the denial of his public records request. For the following reasons, we affirm both.

<u>Statement of the Facts and Case</u>

{¶2} Appellant was found guilty by a jury of four counts of aggravated murder, two counts of kidnapping, and one count of arson. Two of the four counts of aggravated murder merged for sentencing, and Appellant was sentenced to two life sentences without parole on the two aggravated murder convictions. He was sentenced to ten years on each kidnapping count and eighteen months for arson, with all counts to be served consecutively. *State v. Barnette*, 7th Dist. Mahoning No. 11 MA 196, 2014-Ohio-5673, ¶ 8. Appellant filed a direct appeal, and we affirmed his convictions in December of 2014.

{¶3} After a myriad of postconviction proceedings, Appellant filed a pro se application for DNA testing in March of 2023. In his application, Appellant alleged he had an alibi defense that was never presented at trial. He also alleged that further DNA testing of three items would prove not to contain his DNA. Appellant requested DNA testing of three items he identifies as a black plastic bag taken off of one victim's head (BCI Item 9.2); the inside of the roll of duct tape found on another victim (BCI Item 6); and a piece of yellow rubber (BCI Item 9.3). Appellant alleged this DNA evidence was tested, the results were used during his trial, and additional testing would prove it did not contain his DNA.

{¶4} He averred the evidence and testimony at trial showed the foregoing three items contained "partial mixture profile" DNA, which indicated he could not be excluded as a contributor to the DNA found. He claims it is now known that a "partial mixture DNA profile is unreliable, and deemed inadmissible." He refers to advances in DNA testing without evidence or law supporting these contentions. Nonetheless, he claims current testing of the items will exclude him as a contributor, possibly find the perpetrator, and undermine the state's evidence. (March 20, 2023 Application for DNA Testing.)

<u>Case No. 23 MA 0089</u>

**{¶5}** In support, he attached a letter from his attorney describing the DNA evidence as a "composite profile." Appellant did not offer an affidavit from a forensic scientist or other expert in support of his proposition that the DNA evidence used during his trial is no longer reliable or admissible. (March 20, 2023 Application for DNA Testing.)

**{¶6}** He also alleged that if an "exclusion result" were obtained, it would be outcome determinative since it would disprove these were the items he purchased from the Family Dollar Store, which was captured in a surveillance video and played at trial. He also claims an exclusion result would establish that Appellant did not handle the duct tape, plastic bag, and the yellow rubber piece recovered from the victims' bodies. (March 20, 2023 Application for DNA Testing.)

**{¶7}** Appellant attached an affidavit from his sister, who states Appellant was with her, her mother, and her children on the date of the murders. She does not, however, identify the time period during which he was with them. She also states she was prepared to testify at trial, but she was never called as a witness. (March 20, 2023 Application for DNA Testing.)

**{¶8}** The state urged the trial court to overrule Appellant's Application for DNA testing claiming that two of the three items were already tested, and the results were introduced at trial. Thus, the state claimed the trial court was precluded from granting the application pursuant to R.C. 2953.74(A) since there were prior definitive tests regarding the same biological evidence.

**{¶9}** In addition, the state's opposition alleged there was overwhelming trial testimony, circumstantial evidence, and DNA evidence linking Appellant to the crimes. The state claimed Appellant failed to show additional testing would be "outcome determinative" in light of the other overwhelming evidence against him. Thus, it alleged the court should deny the application because the DNA testing would not be outcome determinative even if an exclusion result were obtained.

**{¶10}** In May of 2023, Appellant separately filed a public record request seeking all police records related to his arrest and investigation and all records from the Mahoning County Prosecutor's Office regarding his case. Appellant contends that the prosecutors were "overzealous" in seeking his conviction. (May 26, 2023 Motion for Public Records.)

**{¶11}** The state opposed his public record request. The trial court overruled both motions on June 14, 2023.

**{¶12}** Regarding the DNA test request, the trial court noted Appellant had to show additional DNA testing "would show there is a strong probability that no reasonable factfinder would have found the offender guilty of the offense. [And] the Court further finds that the evidence produced at trial was extremely convincing including but not limited to the surveillance video from the Dollar General store showing the Defendant-Petitioner purchasing the items used in the commission of the crime." It overruled the application. (June 14, 2023 DNA Judgment.)

**{¶13}** As for Appellant's request for public records, the trial court found the defendant "had not established that the information sought is necessary to support a justiciable claim. The Court further finds the Defendant has not established any pending proceeding that would warrant the requested records." (June 14, 2023 Public Record Judgment.)

**{¶14}** Appellant appealed both decisions and raises two assignments of error. We address his assignments out of order for ease of analysis.

Postconviction Public Records Request

**{¶15}** Appellant's second assignment of error asserts:

"The trial court abused its discretion in denying Appellant's request to obtain public records."

**{¶16}** R.C. 149.43(B) generally governs the disclosure of records from a public office.

**{¶17}** Appellant's request herein is governed by R.C. 149.43(B)(8), which states:

A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction * * * to inspect or to obtain a copy of any public record concerning a criminal investigation * * *, *unless* the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and *the judge who imposed the sentence or made the adjudication with respect to the person * * * finds that*

*the information sought in the public record is necessary to support what*
*appears to be a justiciable claim of the person.*

(Emphasis added.) R.C. 149.43.

**{¶18}** In this context, a "justiciable claim" has been defined as "'a claim properly brought before a court of justice for relief.'" *State v. Seal*, 4th Dist. Highland No. 13CA10, 2014-Ohio-4168, ¶ 8, quoting *State v. Wilson*, 2d Dist. Montgomery No. 23734, 2011-Ohio-4195, ¶ 9. Certain appellate districts have held that "[e]stablishing a justiciable claim ordinarily involves identifying a '*pending* proceeding with respect to which the requested documents would be material.'" *State v. Rodriguez,* 12th Dist. Preble No. CA2013-11-011, 2014-Ohio-2583, ¶ 14, quoting *State v. Rodriguez,* 6th Dist. Wood Nos. WD-13-026, WD-13-053 and WD-13-071, 2014-Ohio-1313, ¶ 5. (Emphasis added.) *State v. Seal*, 4th Dist. Highland No. 13CA10, 2014-Ohio-4168, ¶ 8.

**{¶19}** Whereas the Eleventh District found: "The statute does not require that a justiciable claim is pending, only that the inmate has a justiciable claim to be advanced. Moreover, there are times when an inmate is required to attach copies of court documents to initial pleadings in order to state a viable claim for relief such as a petition for a writ of habeas corpus R.C. 2725.04(D) (copies of commitment papers must be attached to petition)." *State v. Askew*, 2017-Ohio-1512, 89 N.E.3d 55, ¶ 12 (11th Dist.).

**{¶20}** We agree that R.C. 149.43(B)(8) does not require a *pending* justiciable claim, but the information sought from the public record "is necessary to support what appears to be a justiciable claim of the person." *Id.* Thus, the information could be requested in advance of filing a claim. Regardless, the onus is on the applicant to identify the justiciable claim to be advanced with the requested information at the time of filing to allow the trial court to assess whether the requested material is necessary to support the claim.

**{¶21}** Appellant argues the trial court erred by denying his request since it was made in furtherance of his application for DNA testing. He now claims these records are paramount to his defense and contentions raised in his Application for DNA testing. Appellant opines these records may uncover alternative suspects and whatever is contained in the police and prosecution's records constitutes "all available evidence"

which the court was statutorily required to consider when ruling on an application for DNA testing under R.C. 2953.74(D).

{¶22} However, Appellant did not reference his Application for DNA testing in his motion for public records. In his motion for public records, Appellant states he is seeking to obtain the prosecution and police records to investigate the justiciable claims of "misconduct or defense." Appellant also states in part that the prosecution was overzealous in seeking a conviction. Yet, he does not identify what claim, motion, or cause of action he sought to further advance with the requested information. (May 26, 2023 Motion for Public Records.)

{¶23} The state opposed Appellant's public records request pointing out he failed to identify what justiciable claim he wanted to support with the requested information. It asserted Appellant had already exhausted his appeals and been denied postconviction relief. (June 9, 2023 Opposition.)

{¶24} Because Appellant did not identify what claim he sought to advance with the requested information, Appellant did not carry his burden. Thus, we find no error and affirm the trial court's decision overruling his public records request.

{¶25} Appellant's second assignment of error lacks merit and is overruled.

Postconviction Application for DNA Testing

{¶26} Appellant's first assigned error asserts:

"The trial court abused its discretion when it erroneously based its outcome determinative analysis on evidence as it existed at the time of the original trial rather than 'all available admissible evidence' as required by R.C. 2953.74(D)."

{¶27} Appellant's assigned error consists of three main arguments. Appellant first contends the trial court erred by only considering evidence presented at trial as opposed to all available evidence, including the affidavit of his sister attached to his motion. Appellant also references an affidavit by another individual, Raymond Powell, who allegedly had knowledge about two key witnesses who were allegedly coerced to testify against Appellant by someone named Damon Clark.

{¶28} Regarding this argument, Appellant did not attach the affidavit of Raymond Powell, which he relies on in his application. Notwithstanding, this court has previously addressed an affidavit by this same individual when addressing a prior appeal from an

untimely motion for a new trial. We found the Powell affidavit in that appeal was inadmissible, explaining: "Powell's statements in the affidavit were entirely based on hearsay. There is not a single statement that Powell could testify to in a new trial. Powell has no independent information. Everything that he states in the affidavit is what Clark supposedly told him." *State v. Barnette*, 7th Dist. Mahoning No. 15 MA 0160, 2016-Ohio-3248, ¶ 34. Thus, to the extent Appellant attempts to rely on the same affidavit here, it should not be considered admissible evidence.

**{¶29}** Appellant next asserts his public records request was designed to secure evidence to support his application for DNA testing, but the trial court overruled his request. Appellant wants copies of the police and prosecutors' investigative work product to secure witnesses' prior statements to the contrary to bolster his claim of innocence. However, as detailed under his second assignment of error, we overrule any argument about his public record request since the motion filed with the trial court makes no mention of his application for DNA testing.

**{¶30}** Third, Appellant claims that advances in DNA technology have made the evidence introduced at his trial obsolete, and thus the DNA evidence at his trial does not constitute a "definitive DNA test" as that term is statutorily defined.

**{¶31}** Trial courts have discretion when deciding whether to grant a postconviction request for DNA testing that depends on the facts of each case. Appellate courts review postconviction applications for DNA testing for an abuse of discretion, *State v. Scott*, 171 Ohio St. 3d 651, 2022-Ohio-4277, 220 N.E. 3d 668, ¶ 10. Thus, we must affirm unless we find the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 92 Ohio St.3d 529, 533, 751 N.E.2d 1032 (2001).

**{¶32}** As stated, the trial court here denied Appellant's application. It first noted the applicant "must establish that the requested DNA testing would show there is a strong probability that no reasonable factfinder would have found the offender guilty of the offense." It also determined "the evidence produced at trial was extremely convincing including but not limited to the surveillance video from the Dollar General store showing the [applicant] purchasing the items used in the commission of the crime." (June 14, 2023 DNA Judgment.)

Case No. 23 MA 0089

{¶33} It did not reach the merits of the state's argument about whether the DNA evidence presented during his trial constitutes a "definitive DNA test."

{¶34} Applications for postconviction DNA testing are governed by Chapter 2953 of the Ohio Revised Code. R.C. 2953.74 dictates a court's responsibilities when considering an application.

{¶35} R.C. 2953.74(A) states in part, "[i]f an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and a prior definitive DNA test has been conducted regarding the same biological evidence that the offender seeks to have tested, the court shall reject the offender's application."

{¶36} The state contends that R.C. 2953.74(A) applies here since there was prior DNA testing of the same evidence, which was the prior definitive DNA test, and as such, the trial court was required to reject the application. Appellant, however, argues that R.C. 2953.74(B)(2) governs. A review of both subsections shows the state is correct.

{¶37} R.C. 2953.74(B)(2) gives a court discretion to grant an application if three prongs are satisfied. It states in part:

> If an eligible offender submits an application for DNA testing * * *, the court may accept the application * * * if [1.] The offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, [2.] the test was not a prior definitive DNA test that is subject to division (A) of this section, and [3.] the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

(Emphasis added.)

{¶38} R.C. 2953.71(U) defines "Definitive DNA test" as:

> "Definitive DNA test" means a DNA test that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and also clearly establishes whether or not the biological

material is that of the eligible offender. <u>A prior DNA test is *not* definitive if the eligible offender proves by a preponderance of the evidence that because of advances in DNA technology there is a possibility of discovering new biological material from the perpetrator that the prior DNA test may have failed to discover.</u> Prior testing may have been a prior "definitive DNA test" as to some biological evidence but may not have been a prior "definitive DNA test" as to other biological evidence.

(Emphasis added.)

**{¶39}** A plain reading of R.C. 2953.74(B)(2) shows all three prongs must be satisfied before the court can grant an application under this section. *See State v. Buehler,* 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, ¶ 31-36 (if DNA testing would not be outcome determinative, the trial court need not evaluate the other criteria or require the prosecutor to file a report on the sample). Thus, a court's conclusion that one criterion from R.C. 2953.74 is lacking means it need not evaluate the other applicable sections. *Id* at ¶ 29-31. *Accord State v. Bunch*, 7th Dist. Mahoning No. 14 MA 168, 2015-Ohio-4151, ¶ 62.

**{¶40}** Here, the first prong of R.C. 2953.74(B)(2) was satisfied because there was DNA testing and Appellant now seeks to have the same evidence tested again.

**{¶41}** As stated, Appellant's application requested DNA testing of the three items which he describes as: a black plastic bag taken off of one victim (Item 9.2); the inside of the roll of duct tape found on another victim (Item 6); and the yellow rubber piece (Item 9.3). Appellant alleged this DNA evidence was used during his trial and that additional testing would prove it does not contain his DNA.

**{¶42}** While it is not the function of the court of appeals to root out evidence in support of an argument, (App.R. 16(A)(7)), our review of the record has not identified an Item 9.3. While Items 9.2 and 6 are generally consistent with Appellant's descriptions, the item he refers to as Item 9.3 is not identified in the record. Regardless, the description of it as "the yellow rubber piece" corresponds with the images and descriptions of Items 9 and 9.2, which were tested by BCI. Further, Appellant contends in his application that the item was tested. In light of the lack of evidence about the item and whether it was tested, we will not conduct a separate hypothetical analysis for it. *See Kremer v. Cox,*

114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist.1996) (It is an appellant's burden to affirmatively demonstrate error on appeal).

{¶43} Regardless, Items 9.2 and 6 were tested. Additionally, corresponding evidence was submitted to the trial court consistent with the state's claim of prior definitive DNA testing. The evidence presented at trial included the following.

{¶44} A forensic scientist with the Ohio Bureau of Criminal Identification and Investigation (BCI) Christopher Smith testified for the state. He worked on the case and swabbed different items of evidence and provided DNA analysis. He swabbed BCI item 6, which is duct tape and a garbage bag taken from around the head of victim Jaron Roland. Smith also swabbed the roll of duct tape and bag. BCI Item 9 included the duct tape and the black plastic bag removed from Darry Woods' head. Smith took two samples from Item 9. (Trial Tr. 578-579.)

{¶45} Item 9.2 is a cutting of a piece of the duct tape from Item 9 with a piece of yellow rubber material on it and some of the garbage bag attached. Item 9.1 was a swabbing of the yellow rubber piece, which Smith opined was possibly a piece of a rubber glove. Smith tested the swabbing, some of the duct tape, and some of the yellow piece. They were tested together. (Trial Tr. 580, 610-612, 654-655.) Smith also swabbed BCI items 12, 7, 8 and 9. (Trial Tr. 565-566.)

{¶46} After testing item 9.2, Smith said he was "able to find a mixture that was consistent with contributions from Lorenza Barnette and Darry Woods." (Trial Tr. 590.) He also testified about the statistical results for the inclusion of Appellant as being positive DNA from that item. Smith said he concluded that "Lorenza Barnette cannot be excluded from the DNA from the cutting of the duct tape and the black plastic bag from Darry Woods' head with the yellow rubber piece." (Trial Tr. 591.) He described it as a mixture of DNA and a partial profile.

{¶47} In Smith's BCI Laboratory Report dated April 1, 2011, identified as state's exhibit 203, Smith lists the items he tested. Relative to Appellant's arguments here, Smith's list states:

> 9 One box containing duct tape and black plastic bag from Darry Woods'
> head and neck

9.1 Swab from yellow rubber piece found on duct tape and black plastic bag from Darry Woods' head and neck

9.2 Cutting of duct tape and black plastic bag from Darry Woods' head and neck with the yellow rubber piece

(State's Exhibit 203.)  Under the results section, Smith states in part:

The partial DNA profile from the swab from the yellow rubber piece found on the duct tape and black plastic bag * * * (Item 9.1) is insufficient for comparison purposes.

The partial DNA profile from the cutting of the duct tape and black plastic bag * * * with the yellow rubber piece (Item 9.2) is a mixture consistent with contributions from Lorenzo [sic] Barnette and Darry Woods.

(State's Exhibit 203.)

{¶48}  Under the conclusions section, Smith wrote in part:

Joseph Moreland, Asa Bush, Kenneth Moncrief and Jaron Roland are not contributors to the DNA on the cutting from the duct tape and black plastic bag from Darry Woods' head and neck with the yellow rubber piece.

Lorenzo [sic] Barnette cannot be excluded as a contributor to the DNA  from the cutting of the duct tape and black plastic bag from Darry Woods' head and neck with the yellow rubber piece.

(State's Exhibit 203.)

{¶49}  There are also state's photographs depicting these physical exhibits. State's Exhibit 429 is a photograph of a garbage bag with what appears to be a blue plastic handle or drawstring.  The trash bag has silver duct tape on it in various locations, and the cardboard end of a roll of duct tape with the tube is attached.  It is labeled as depicting Item 6.   (State's Exhibit 429.)

{¶50}  State's Exhibit 432 is a photograph of Item 9.  It depicts a black trash bag with what appears to be a blue handle.  It also appears to have duct tape on the bag. (State's Exhibit 432.)

{¶51}  State's Exhibit 433 also states it is Item 9.  It is a different view of the trash bag shown in Exhibit 432.  It depicts more duct tape than that shown in Exhibit 432 and a yellow item in the center.  (State's Exhibit 433.)

{¶52} State's Exhibit 434 is also a photograph of Item 9. It depicts a yellow piece with what appears to be duct tape attached. A ruler is in the photograph next to the yellow item, showing it is approximately four inches in length. (State's Exhibit 434.)

{¶53} Brenda Gerardi, a forensic biologist with the BCI, testified that she analyzed certain items in evidence at Appellant's trial. Regarding state's exhibits 67 (item 6) and 75 (item 6.1), Gerardi testified: "The DNA profile from the inside of the roll of duct tape found on [the victim's] head and neck is a mixture consistent with contributions from [the victim] and Lorenza Barnette. Lorenza Barnette cannot be excluded as a contributor to the DNA from inside the roll of duct tape found on [the victim's] head and neck." (Trial Tr. 686, State's Exhibit 75.) When asked about item 6.1 on redirect, the state asked "with what frequency would you expect to see Lorenza Barnette's profile in the mixture?" She answered: "It was one in 39 billion, 570 million unrelated persons." (Trial Tr. 744.)

{¶54} In Gerardi's BCI Laboratory Report dated June 3, 2010, identified as state's exhibit 202, Gerardi states in part under the results section: "The DNA profile from the inside of the roll of duct tape * * * (Item 6.1) is a mixture consistent with contributions from Jaron Roland and Lorenza Barnette." (State's Exhibit 202.)

{¶55} Under the conclusions section, Gerardi concludes in part:

No conclusions can be made regarding Lorenzo [sic] Barnette as a minor contributor to the DNA from the inside of the roll of duct tape * * * (Item 6.2) or the surface of the roll of duct tape * * * (Item 6.3).

Lorenzo [sic] Barnette cannot be excluded as a contributor to the DNA from inside of the roll of duct tape * * * (Item 6.1).

(State's Exhibit 202.)

{¶56} As for the second prong, however, the definition of "Definitive DNA test" puts the burden on the offender to: "prove * * * by a preponderance of the evidence that because of advances in DNA technology there is a possibility of discovering new biological material from the perpetrator that the prior DNA test may have failed to discover." R.C. 2953.71(U).

{¶57} Appellant fails to direct the trial court or this court to anything showing "the test was not a prior definitive DNA test that is subject to division (A)." Thus, R.C. 2953.74(A) applied, and the trial court was required to reject the application.

Case No. 23 MA 0089

**{¶58}** Appellant did not present evidence that new technological advances would prove his DNA was not present on the items which he asks to be tested. He likewise did not present any evidence about advances in DNA technology and the possibility of discovering new biological material from the perpetrator. Appellant does not offer any evidence tending to demonstrate what the advances in DNA technology are or the predicate for his argument.

**{¶59}** Thus, regardless of the validity of his claims, we must disregard them since the burden was on Appellant to show there was no prior definitive DNA test. R.C. 2953.71(U). Absent evidence in this regard, the trial court was required to reject the application under R.C. 2953.74(A). *See generally State v. Bunch*, 7th Dist. Mahoning No. 14 MA 168, 2015-Ohio-4151, ¶ 45 (applicant attached affidavit of laboratory director of DNA forensic department describing advances in DNA testing); *State v. Gavin*, 2022-Ohio-3027, 195 N.E.3d 226, ¶ 41 (4th Dist.) (application supported by an expert affidavit stating there was a reasonable expectation of obtaining informative DNA results with additional testing).

**{¶60}** Appellant's third sub-argument under his first assigned error lacks merit.

**{¶61}** Because Appellant did not show, based on a preponderance of the evidence, that "because of advances in DNA technology there is a possibility of discovering new biological material from the perpetrator that the prior DNA test may have failed to discover," we affirm the trial court's decision on this basis.

**{¶62}** Notwithstanding, Appellant's first and remaining argument under this assignment of error challenges the trial court's determination that additional DNA testing would not be outcome determinative. He claims the court's finding under the third prong, i.e., a DNA exclusion would have been outcome determinative, is erroneous because the trial court did not employ the correct test.

**{¶63}** He claims the court did not consider "all evidence" available, as required. Instead, Appellant claims the court only considered the evidence that was actually introduced at trial. Additionally, Appellant contends the trial court erred by applying the wrong definition of what constitutes "outcome determinative."

**{¶64}** The trial court found in part the applicable test required Appellant to show "there is a strong probability that no reasonable factfinder would have found the offender guilty of the offense." (June 14, 2023 DNA Judgment.)

**{¶65}** R.C. 2953.71(L) defines outcome determinative in this context and states:

(L) "Outcome determinative" means that had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense * * *.

(Emphasis added.)

**{¶66}** As Appellant claims, "[i]f an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court, in determining whether the 'outcome determinative' criterion described in divisions (B)(1) and (2) of this section has been satisfied, shall consider *all* available admissible evidence related to the subject offender's case." (Emphasis added.) R.C. 2953.74(D). Again, R.C. 2953.74(B)(2) states the court may accept the application if:

the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

**{¶67}** Additionally, R.C. 2953.73(D) states:

[I]n making the determination, [the court] shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of

the court, and the court reporter's transcript and all responses to the application * * *.

**{¶68}** While a court is required to consider all available admissible evidence, there is nothing in the statute requiring it to list or identify the evidence it considered. *Id.* A court is, however, required to state its reasons for denying an application. R.C. 2953.74(D) ("the court shall enter a judgment and order that either accepts or rejects the application and that includes within the reasons for the acceptance or rejection * * *.")

**{¶69}** The trial court here identified the reason it was denying Appellant's application when it stated: "the Court further finds that the evidence produced *at trial* was extremely convincing including but not limited to the surveillance video from the Dollar General store showing the Defendant-Petitioner purchasing the items used in the commission of the crime." (Emphasis added.) (June 14, 2023 DNA Judgment.)

**{¶70}** Because the trial court's judgment tends to show the court only considered the evidence presented at trial, as opposed to "all available admissible evidence[,]" we find error. *See State v. Gavin*, 4th Dist. Scioto No. 21CA3956, 2022-Ohio-3027, 195 N.E.3d 226, ¶ 34 (a court cannot limit its analysis to the trial evidence but must also consider the evidence introduced during the postconviction proceedings).

**{¶71}** To the extent the trial court only considered the evidence from the trial when addressing Appellant's Application for DNA testing, it erred. However, the trial court's error is harmless since it has no impact on Appellant's failure to prove by a preponderance of the evidence that the prior DNA testing was no longer definitive, an independent requirement under R.C. 2953.74(B)(2).

**{¶72}** Based on the foregoing, we affirm the trial court's decision denying Appellant's application for DNA testing, albeit for different reasons.

## Conclusion

**{¶73}** Appellant's first assigned error has merit in part. We find error in part but conclude the error was harmless. Accordingly, we affirm the court's decision denying Appellant's Application for DNA testing.

**{¶74}** Appellant's second assignment of error lacks merit and is overruled. The trial court's decision denying his public records request is affirmed.

Waite, J., concurs.

Klatt, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**