# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

LORENZA I. BARNETTE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0027**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2009 CR 01122

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*,* and *Atty. Ralph M. Rivera*, Chief,
Criminal Division, for Plaintiff-Appellee and

Lorenza I. Barnette*,* Defendant-Appellant.

Dated:  July 26, 2024

**DICKEY, J.**

{¶1} In the tenth appeal following his 2011 conviction for aggravated murder, kidnapping, and arson, Appellant, Lorenza I. Barnette, acting pro se, contends the Mahoning County Court of Common Pleas abused its discretion in overruling his third motion for leave to file a motion for new trial. The trial court concluded Appellant did not establish he was unavoidably prevented from discovering the new evidence (coerced testimony of a state's witness) in a timely manner. For the following reasons, the judgment entry of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶2} On October 1, 2009, Appellant was indicted on two counts of aggravated murder in violation of R.C. 2903.01(A)(F) (prior calculation and design) with death penalty specifications; two counts of aggravated murder in violation of R.C. 2903.01(B)(F) (felony murder) with death penalty specifications; two counts of kidnapping in violation of R.C. 2905.01(A)(2); two counts of aggravated robbery in violation of R.C. 2911.01(A)(3)(c); and arson in violation of R.C. 2909.03(A)(1)(B)(2). Appellant and two others, Joseph Moreland and Kenneth Moncrief (who entered guilty pleas subsequent to Appellant's convictions), were accused of killing two men on August 11, 2009 while committing or attempting to commit a robbery. After Appellant and Moncrief suffocated the victims pursuant to Moreland's order, Appellant placed the bodies in an automobile, which he set on fire in order to conceal the crimes.

{¶3} A jury convicted Appellant on all four counts of aggravated murder, both counts of kidnapping, and the sole count of arson. He was acquitted of the two charges of aggravated robbery. The trial court imposed the following sentences to be served consecutively: life imprisonment without parole for each of the two aggravated murder convictions (which merged with the remaining two), ten years for each of the kidnapping convictions, and eighteen months for the arson conviction.

{¶4} On direct appeal, we affirmed Appellant's convictions and sentence. *State v. Barnette*, 2014-Ohio-5673 (7th Dist.), appeal not allowed, 2015-Ohio-2747. We denied Appellant's subsequent application for reopening in *State v. Barnette*, 2015-Ohio-1280 (7th Dist.). Next, Appellant filed an appeal regarding the trial court's decision to deny his

motion for leave to file an untimely motion for new trial, which this Court affirmed in *State v. Barnette*, 2016-Ohio-3248 (7th Dist.) ("*Barnette III*"). Appellant appealed the trial court's denial of his first postconviction petition in *State v. Barnette*, 2017-Ohio-9074 (7th Dist.). Appellant then appealed a resentencing entry, which we vacated in part and issued a limited remand, instructing the court to hold a hearing solely on the issue of postrelease control. *State v. Barnette*, 2020-Ohio-6817 (7th Dist.). Thereafter, Appellant filed his second application for reopening which was denied in *State v. Barnette*, 2021-Ohio-2484 (7th Dist.). Appellant then filed a writ of mandamus, which we denied in *State ex rel. Barnette v. Sweeney*, 2022-Ohio-3425 (7th Dist.). Appellant filed yet another petition to vacate or set aside the judgment of conviction or sentence, which was construed as a postconviction petition. The trial court overruled the petition as untimely, and the decision of the trial court was affirmed in *State v. Barnette*, 2023-Ohio-2377 (7th Dist.), appeal not allowed, 2023-Ohio-3328. Finally, we affirmed the trial court's decision overruling Appellant's postconviction application for DNA testing and his public records request last year in *State v. Barnette*, 2024-Ohio-1172 (7th Dist.), appeal not allowed, 2024-Ohio-2373.

{¶5} On January 8, 2024, Appellant filed the motion for leave to file motion for new trial/motion for new trial currently before us on appeal. The motion constitutes Appellant's third effort to receive a new trial. The first motion for leave to file motion for new trial was predicated upon the affidavit of a fellow inmate, Rayshawn Powell, and was overruled by the trial court, and affirmed by this Court in *Barnette III*. Appellant's second motion for leave was predicated upon a Forensic Bioinforamatics DNA Report. The motion was similarly overruled by the trial court, however the appeal was dismissed for failure to file a merits brief.

{¶6} The motion for leave currently before us reads, in relevant part, "the prosecution threaten, [sic] and pressured Alfonda Madison its own witness into recanting his exculpatory testimony, and giving false testimony that incriminated [Appellant.]" (Motion for Leave, p. 1.) The motion further reads, "[Appellant] had no knowledge of the threats, [sic] and pressure that [Madison] received from the Prosecuting Attorney to recant his exculpatory testimony, and give false testimony that incriminated [Appellant.]" (*Id.* at p. 2.) Finally, the motion reads, "[Madison] can, [sic] and will explain at an evidentiary

hearing if granted, or once [Appellant] retains an attorney or private investigator to secure his affidavit." (*Id.*)

**{¶7}** In the motion, Appellant concedes he was aware that Madison "changed his prior statements and gave false testimony at trial," but Appellant contends he "exercised reasonable diligence to get in contact with [Madison]." (*Id.* at p. 3.) Appellant writes:

> While incarcerated [Appellant] asked Fredrick Moreland, Michael Austin Sr., and Lawrence Ross, to reach out to [Madison], because they could contact him. They were not corroborative [sic], or successful. [Appellant] then asked Lorenza Barnette Sr. to reach out to Attorney Gerald Ingram to contact [Madison]. Mr. Ingram did not attempt to do so. Finally, [Appellant] reached out to [Madison] by way of Hilary Sension through her Facebook unto [Madison's] Facebook. [Madison] recently responded to [Appellant] on December 12, 2023, through [Sension's] Facebook.

(*Id.* at p. 3-4.) A list of four names captioned "[a]ffidavits that are expected" are listed in the motion: Hilary Sension, Alfonda Madison, Lorenza Barnette Sr., and Appellant.

**{¶8}** Due to the time limits prescribed by the Criminal Rules, Appellant filed a combined motion for leave and motion for new trial. The "expected" affidavits were not attached to the motion.

**{¶9}** After the state filed its response brief, Appellant filed an amended motion for leave to file motion for new trial on January 29, 2024. Appellant attached his own affidavit and the affidavit of Hilary Grace Sension. Sension's affidavit reads, in its entirety, "Per [Appellant's] request, I messaged [Madison] via Facebook on May 31, 2022. [Madison] messaged me back via Facebook on December 16, 2023. Appellant's affidavit reads, in relevant part:

> I hereby swear under oath that I had no knowledge of the existing threats that were made by the Prosecution to [Madison]. I had no knowledge of this information until December 16, 2023. I could not have known this misconduct took place without [Madison] coming forward or the Prosecution coming forward.

{¶10} At trial, Madison, who was present at the murder scene, testified Appellant and Moncrief committed the murders. (Trial Tr., 768-770). Madison admitted, however, he initially told law enforcement that Appellant tried to stop the murders and was not aware of the kidnapping and murder plan. Madison originally told law enforcement that it was Moncrief and Moreland who duct taped the plastic bags on the victims' heads. (*Id.*, 789-790). Madison explained he made these false statements because he feared for his life. Appellant was already in jail when Madison provided his original statement, however Moncrief and Moreland were not. (*Id.*, 794). Madison conceded he received a deal from the State in exchange for his cooperation in this case. (*Id.*, 782-784).

{¶11} Asa Bush, who was also present at the murder scene, likewise testified that Appellant and Moncrief committed the murders. (*Id.*, 507-511). However, when Bush was first interviewed by law enforcement, he implicated Moreland and "Dajuan" as the perpetrators. (*Id.*, 516–517). Lieutenant John Kelty testified that he never identified "Dajuan" during his investigation. (Trial Tr., p. 870.). Bush similarly stated he was afraid of Moreland and wanted him to be arrested because Bush had a better chance of surviving if Moreland was in jail. (*Id.*, 517). The second time Bush talked to law enforcement, he identified Appellant and Moncrief as the perpetrators, and added they were acting on Moreland's orders. (*Id.*, 518–519). Bush conceded he was seeking a deal with prosecutors on pending charges. (*Id.*, 525-526). Bush further conceded he was facing a possible sentence of 46 years in prison, but he negotiated a deal to cooperate in this case in exchange for a reduced prison sentence. (*Id.*, 526–530).

{¶12} Appellant challenged the veracity of the foregoing testimony in *Barnette III*. Appellant offered the Powell affidavit in support of his motion for leave to file an untimely motion for new trial. According to Powell's affidavit, Damon Clark confided in Powell that Clark coerced and manipulated his cousin, Madison, and Madison's friend, Bush, into implicating Appellant in the double homicide. According to Powell, the three men, Clark, Madison, and Bush, formulated the plan to get revenge on their cousin, Moreland, for testifying against Clark. The three men manufactured multiple statements to prompt Moreland's arrest and to reduce the charges pending against Madison and Bush.

{¶13} According to Powell's affidavit, Clark told Powell that Appellant was innocent. Clark explained Madison and Bush gave perjured testimony at Appellant's trial

that contradicted their original police statements because Appellant did not participate in their scheme to imprison Moreland.

{¶14} In affirming the trial court's judgment entry overruling the motion for leave to file in *Barnette III*, we recognized that Powell's affidavit constituted inadmissible hearsay (as it contained the purported statement of Clark) and would not be admitted at trial. Further, Appellant knew Clark personally and should have sought the information from Clark directly. Finally, we opined the outcome of the trial would not have been different due to vigorous cross-examination of Madison and Bush by defense counsel. We observed:

> The statements in the affidavit, even if they were admissible, would not have changed the outcome of appellant's trial. Both Madison and Bush changed their accounts of who committed the murders. The jury heard this. The jury also knew that Madison and Bush received breaks in the charges/sentences they were facing in other cases in exchange for their testimony against appellant. Thus, the jury was well aware that Madison and Bush both lied to police and changed their stories and that they were benefitting themselves by testifying against appellant. Thus, testimony that Madison and Bush lied to police and changed their stories would not have been new information for the jurors to consider. Therefore, it would not have changed the outcome of appellant's case.

*Barnette III* at ¶ 27.

## MOTION FOR NEW TRIAL

{¶15} A motion for new trial may be granted when new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial, and the defendant can show the new evidence materially affected his rights. Crim.R. 33(A)(6). "When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given . . ." *Id.* The rule does not mandate an oral, evidentiary

hearing on every motion, and the "trial court holds the discretion to decide whether a Crim.R. 33 hearing should be held." *State v. Baer*, 2017-Ohio-7759, ¶ 12 (7th Dist.).

**{¶16}** There are time requirements for new trial motions. "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived." Crim.R. 33(B). However, "[i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Id.*

**{¶17}** If the court does not grant leave, then a contemporaneously-filed motion for new trial need not be addressed. "Leave must be granted before the merits are reached." *State v. Lordi*, 2002-Ohio-5517, ¶ 25 (7th Dist.).

**{¶18}** To meet the clear and convincing standard, the evidence offered by a defendant in support of his motion for leave must "produce in the mind of the trier of facts a firm belief or conviction" that he was unavoidably prevented from discovering the facts sought to be established. *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). A defendant is unavoidably prevented from filing a motion for a new trial if he "had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Lordi* at ¶ 26, 29, quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146 (10th Dist.1984).

**{¶19}** A trial court's ruling on a motion for leave to move for a new trial is reviewed for an abuse of discretion. *See State v. Davis*, 2011-Ohio-5028, ¶ 37 (explaining that "[t]he trial court acts as the gatekeeper for [motions for a new trial] and, using its discretion, can limit the litigation to viable claims only"); *State v. Hessler*, 90 Ohio St.3d 108, 124 (2000) (applying the abuse-of-discretion standard to review a trial court's denial of a motion for a new trial without conducting an evidentiary hearing). However, questions of law are reviewed de novo. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38-39.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT GRANT APPELLANT AN ATTORNEY INVESTIGATOR, OR EXTENSION OF TIME TO OBTAIN ALFONDA MADISON'S AFFIDVIT TO SUPPORT HIS CRIM.R. 33(B) MOTION FOR LEAVE TO FILE A DELAYED MOTION FOR NEW TRIAL.**

## ASSIGNMENT OF ERROR NO. 2

**IN VIOLATION OF THE 6 AND 14 AMENDMENT [SIC] OF THE CONSTITUTION THE PROSECUTOR DEPRIVED APPELLANT OF A FAIR TRIAL.**

**{¶20}** Appellant argues that a 2022 Ohio Supreme Court decision, *State v. McNeal*, 2022-Ohio-2703, compels reversal of the trial court's judgment entry. In *McNeal*, the trial court concluded the appellant failed to demonstrate he was unavoidably prevented from filing a timely motion for new trial. McNeal, who was convicted of rape based on the testimony of a victim that she was too intoxicated to provide informed consent, predicated his motion for leave on an alleged violation of *Brady v. Maryland*, 373 U.S. 83, 86, (1963). In support of the motion, he offered a laboratory report that reflected the victim's blood contained no alcohol content, which he obtained through a post-trial public records request.

**{¶21}** "There are three components of a *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles v. Whitley*, 514 U.S. 419, 433, (1995), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). A different result is reasonably probable "when the government's

evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Kyles* at 434, quoting *Bagley* at 678.

**{¶22}** For the trial court to have jurisdiction to entertain the *Brady* claim alleged in a motion for leave to file a motion for new trial, the defendant first has to establish he was "unavoidably prevented from discovery of the facts" on which he relies. R.C. 2953.23(A)(1)(a). To meet this standard, courts in Ohio have previously held that a defendant ordinarily must show that he was unaware of the evidence he is relying on and that he could not have discovered the evidence by exercising reasonable diligence. *See State v. Harrison*, 2018-Ohio-1396, ¶ 6 (8th Dist.).

**{¶23}** However, where a *Brady* violation is alleged, a defendant may satisfy the "unavoidably prevented" requirement contained in Crim.R. 33(B) simply by establishing the prosecution suppressed the evidence on which the defendant relies in seeking a new trial. In other words, a defendant seeking to assert a *Brady* claim is not required to show that he could not have discovered suppressed evidence prior to the statutory deadline by exercising reasonable diligence. *State v. Bethel*, 2022-Ohio-783, ¶ 25, 59.

**{¶24}** In *McNeal*, *supra*, the victim testified she was "really, really drunk," and unable to consent to sexual intercourse. In support of the motion for leave to file a motion for new trial, McNeal offered a laboratory report, which was not disclosed by the state, which revealed the victim had no detectable amount of alcohol in her bloodstream. The trial court overruled the motion for leave, opining the introduction of the report at trial would not have altered the outcome, based on the victim's trial testimony that she had also smoked marijuana and ingested Klonopin (an anti-anxiety medication), which was confirmed by the report. The Second District Court of Appeals affirmed.

**{¶25}** The Ohio Supreme Court framed the sole issue before the trial court on the motion for leave as follows: "[W]hether leave to move for a new trial should be granted to McNeal because he was unavoidably prevented from timely moving for a new trial due to the state's suppression of evidence." *Id.* at ¶ 21. The Ohio Supreme Court reasoned the "reasonable diligence" requirement was excused where a *Brady* violation is alleged because the state has a duty to disclose exculpatory or impeachment evidence. The *McNeal* Court quoted the United States Supreme Court for the rationale that "defendants have no duty to 'scavenge for hints of undisclosed *Brady* material.' " *Id.* at ¶ 23 (quoting

*Banks v. Dretke*, 540 U.S. 668, 695 (2004)). Because the trial court addressed the merits of the motion for new trial, rather than the limited issue presented by the motion, the Ohio Supreme Court reversed the judgment of the Second District and remanded the matter to the trial court with instructions to grant the motion for leave to file.

**{¶26}** In the above-captioned appeal, Appellant's affidavit provides no timeline of events. Appellant does not plainly state when or why he first suspected Madison's testimony was the result of coercion by the state, nor does he state when he initiated his efforts to contact Madison. Appellant simply avers he had no knowledge of the threats made by the state to Madison until December 16, 2023, the date that Madison responded to Sension's Facebook contact. As a consequence, we find no clear and convincing proof that Appellant was unavoidably prevented from the discovery of the state's alleged coercion of a witness, and we are unable to determine whether Appellant through reasonable diligence could have discovered the alleged coercion prior to the statutory deadline.

**{¶27}** Further, Madison underwent vigorous cross-examination by defense counsel, and provided a reasonable explanation for his initial report to police. Madison testified that he feared for his life and wanted to implicate Moreland in the actual murders so that Moreland would be jailed. Madison originally attributed Appellant's conduct to Moreland because Appellant was already in jail and no threat to Madison.

**{¶28}** In summary, we find Appellant has failed to offer clear and convincing proof that establishes a firm belief or conviction that he was unavoidably prevented from discovering the state's alleged coercion of a witness. Appellant's conclusory affidavit provides no evidence that he was unaware of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence. Accordingly, the judgment entry of the trial court is affirmed.

Robb, P.J., concurs.

Hanni, J., concurs.

Case No. 24 MA 0027

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**